1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11 | ISHAC ESHOO LAZAR,      Case No. 1:21-cv-00972-SAB

12      Plaintiff,      ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL

13      v.

14 COMMISSIONER OF SOCIAL SECURITY,      (ECF Nos. 11, 13, 14)

15      Defendant.

16

17                        **I.**

18            **INTRODUCTION**

19       Ishac Eshoo Lazar ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21 disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

22 on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

23 A. Boone.[1]  Plaintiff argues the ALJ's step four determination that Plaintiff could perform his

24 past relevant work ("PRW") is not supported by substantial evidence.  For the reasons set forth

25 below, Plaintiff's Social Security appeal shall be granted.

26 / / /

27 / / /

28 ---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 5, 7, 8.)

## II.

## BACKGROUND

### A.    Procedural History

On March 19, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a period of disability beginning on September 1, 2017. (AR 198-202.)  Plaintiff's application was initially denied on April 18, 2019, and denied upon reconsideration on October 25, 2019.  (AR 123-127.)  Plaintiff requested a hearing, and appeared on November 12, 2020, for a hearing before Administrative Law Judge Karen Kostol (the "ALJ").  (AR 31-71, 131-32, 161-185.)  Plaintiff appeared for a hearing before the ALJ on February 11, 2020.  (AR 32-66.)  On December 1, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 18-36.)  The Appeals Council denied Plaintiff's request for review on April 29, 2021.  (AR 7-12.)

On June 17, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On March 17, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 9.)  On April 26, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 11.)  On June 10, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 13.)  On June 27, 2022, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 14.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, November 20, 2020:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

- The claimant has not engaged in substantial gainful activity since September 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

- The claimant has the following severe impairments: coronary artery disease with history of coronary artery bypass graft x 3; generalized anxiety disorder; leg length discrepancy; and lumbar spine degenerative joint disease and degenerative disc disease (20 CFR 404.1520(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

- The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can occasionally climb ladders, ropes or scaffolds; can frequently climb ramps or stairs, balance, stoop, crouch, kneel or crawl; work should not have fast-paced production requirements, such as fast-paced assembly line work or high volume piecemeal quotas; capable of occasional interaction with the general public, co-workers or supervisors; and must be afforded the opportunity for brief 1-2 minute changes of position at intervals not to exceed 30 minutes without being off task.

- The claimant is capable of performing past relevant work as a cost clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

- The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2017, through the date of this decision (20 CFR 404.1520(f)).

(AR 21-30.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The regulations are generally the same for both types of benefits.  Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1   Cir. 2004).   The five steps in the sequential evaluation in assessing whether the claimant is

2   disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

13  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

14          Congress has provided that an individual may obtain judicial review of any final decision

15  of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C. § 405(g).

16  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

17  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

18  disturbed only if it is not supported by substantial evidence or is based on legal error."   Hill v.

19  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a

20  scintilla, but less than a preponderance.   Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

21  (internal quotations and citations omitted).   "Substantial evidence is relevant evidence which,

22  considering the record as a whole, a reasonable person might accept as adequate to support a

23  conclusion."   Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

24  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

25          "[A] reviewing court must consider the entire record as a whole and may not affirm

26  simply by isolating a specific quantum of supporting evidence."   Hill, 698 F.3d at 1159 (quoting

27  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).   However, it is not

28  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

1  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

2  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

3  upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

6      Plaintiff argues the ALJ's determination that Plaintiff could perform his past relevant

7  work ("PRW") as a cost clerk as actually and generally performed was not based on substantial

8  evidence, and thus the ALJ erred at step four of the sequential analysis.

**A.    General Legal Standards Applicable to Step Four**

10      "At step four, claimants have the burden of showing that they can no longer perform their

11  past relevant work."  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§

12  404.1520(e), 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990)); see also Lewis v.

13  Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (claimant has burden of showing they do not have the

14  RFC to engage in past relevant work).  While the claimant has the burden of proof at step four,

15  "the ALJ still has a duty to make the requisite factual findings to support his conclusion."  Pinto,

16  249 F.3d at 844.  "This is done by looking at the 'residual functional capacity and the physical

17  and mental demands' of the claimant's past relevant work."  Id. at 844-45 (quoting 20 C.F.R. §§

18  404.1520(e), 416.920(e)).  The claimant must be able to perform: (1) the actual functional

19  demands and job duties of a particular past relevant job; or (2) the functional demands and job

20  duties of the occupation as generally required by employers throughout the national economy.

21  Pinto, 249 F.3d at 844 (citing Titles II & XVI: A Disability Claimant's Capacity to Do Past

22  Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982)).  Thus, the ALJ must make specific factual

23  findings as to the claimant's RFC, the physical and mental demands of the past relevant work,

24  and the relation of the RFC to the past work.  Id.

**B.    Relevant Aspects of the Hearing Testimony, ALJ's Decision, and Record**

26      The ALJ found that Plaintiff had the following severe impairments: coronary artery

27  disease with history of coronary artery bypass graft times three; generalized anxiety disorder; leg

28  length discrepancy; lumbar spine degenerative joint disease; and degenerative disc disease.  (AR

23-24.)  The ALJ found that Plaintiff had the residual functional capacity to perform light work with specified limitations, most relevant here being the limitation to occasional interaction with the general public, co-workers, or supervisors.  (AR 26–27.)[3]  The ALJ called James Ganoe to testify as a vocational expert witness (the "VE"), who testified without objection.  (AR 37, 39.) At step four, the ALJ found that Plaintiff could still perform his past relevant work as a cost clerk both as actually and generally performed.  (AR 29–30.)  The ALJ concluded that the work does not require the performance of work-related activities precluded by the Plaintiff's RFC, for the following reasons:

> The vocational expert classified the claimant's past relevant work as a cost clerk (DOT 216.382- 034) (sedentary as generally performed, light actually performed, and SVP 4) . . .
>
> . . . In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The vocational expert testified that the above residual functional capacity would not preclude the performance of the claimant's past relevant work.

(AR 29-30.)

Plaintiff directs the Court to a description of his work as an "estimates desk" in the transportation industry:

> I had unique job only few position statewide, Worked with contractors and administered processes, generated monthly estimates for all contractors and resident engineers, maintain expenditure and contingency balance for each contract, checking estimates for arithmetic errors and preparing forms to transfer funds from other departments, Audits and verify over and under paid items and codes, checked all extra work bills, verified all items to be paid, verified all contract change orders for each month.

(AR 346.)  Plaintiff notes testimony that he performed office work; that he worked with 10–15 engineers in the field; performed calculations to match specifications; generated estimates; and

---

[3]  The ALJ found Plaintiff to have the RFC to perform light work as defined in 20 CFR 404.1567(b) except: can occasionally climb ladders, ropes or scaffolds; can frequently climb ramps or stairs, balance, stoop, crouch, kneel or crawl; work should not have fast-paced production requirements, such as fast-paced assembly line work or high volume piecemeal quotas; capable of occasional interaction with the general public, co- workers or supervisors; and must be afforded the opportunity for brief 1-2 minute changes of position at intervals not to exceed 30 minutes without being off task.

provided recommendations for headquarters in Sacramento.  (AR 45-46.)  Plaintiff highlights that the VE required no clarification when the ALJ asked whether the VE had any questions for Plaintiff regarding the PRW.  (AR 47-48.)  The Court now turns to discuss the VE testimony.

The VE identified Plaintiff's past work as a cost clerk, classified in the Dictionary of Occupational Titles ("DOT") at 216.382-034, semi-skilled, with an SVP of 4, generally performed at exertional level sedentary, but actually performed at the light exertional level.  (AR 65.)  As most relevant to the Plaintiff's appeal here, the ALJ first directed the VE to assume a person largely reflective of Plaintiff's RFC, but did not include a limitation for occasional contact with the public, coworkers, or supervisors.  (AR 66.)  The VE testified that such person could perform Plaintiff's past work.  (Id.)  The VE also testified such person could perform the following positions: (1) mail clerk (DOT 209.687-026); (2) hand packer (DOT 920.687-166); and price marker (DOT 209.587-034).  (AR 66.)  The VE then confirmed that adding a limitation excluding fast paced production requirements, would not affect the ability to perform Plaintiff's past work.  (AR 66.)  This aligns with the RFC determination, except for the limitation to no more than occasional contact.

The ALJ then asked "if you add a limitation that said individual should have no more than occasional interaction with the general public, workers, and supervisors, would that affect the ability to perform claimant's past work?"  (AR 66-67.)  The following exchange then occurred:

> [VE]  Well, based upon my professional experience, I would say that it would affect his past work.  He would probably have more than occasional contact with workers.

> [ALJ]   What about if it's just occasional interaction with the general public, would that affect the ability to perform the past work?

> [VE]  No, it would not . . .

> [ALJ]   Now returning to the hypothetical wherein the limitation would be occasional interaction with coworkers and supervisors, in addition to occasional interaction with the general public.  You said you believe that would affect the ability to perform the past work?

> [VE]  Yes.

[ALJ]  Would that eliminate the past work?

[VE]  I don't think it would eliminate it but it would affect it.

[ALJ]  So the individual could still perform the past work?

[VE]  Well, we're working in an office setting is what we're working in.  And usually in an office setting the individual has to be around coworkers more than occasionally.  They can offset their worksite a little bit to accommodate for that if they need to.  But in general, they're around coworkers more than occasionally.

[ALJ]  So it could be a simple accommodate of change in the worksite slightly or –

[VE]  Yes, it could be.

[ALJ]  So the past work would remain available?

[VE]  I think accommodations would be made and I think the individual could do the past work, yes.

(AR 67-69.)  Plaintiff's counsel asked for clarification on the issue:

[Counsel]  And the accommodations for occasional interaction with coworkers and supervisors, why type of accommodation would need to be made?

[VE]  Well, the individuals could put him in a cubicle, that's something, they could put a cubicle around the individual where they mainly sit at their desk and did the paperwork without, you know, without close contact to other individuals.

(AR 70.)  Plaintiff contends that an ALJ erred by finding the ability to perform PRW but the evidence requires an accommodation.  (Br. 6.)

## C.     The Court finds the ALJ Erred in the Actually Performed Determination

Plaintiff emphasizes that he worked at a desk providing estimates on roadway projects; worked with contractors, engineers, and checked their work; worked with 10–15 engineers; and interacted with headquarters in Sacramento.  (AR 45–46, 346.)  Given the VE testified the nature of office work *probably* requires more than occasional contact with the public, coworkers, and supervisors (AR 67), Plaintiff argues a finding that Plaintiff had occasional or less contact with public, coworkers, and supervisors as a cost clerk as actually performed would lack the support of substantial evidence.  Plaintiff argues the ALJ pointed to no evidence for the inference that

8

1    Plaintiff actually or really had occasional or less contact with others, nor explained how the

2    evidence led to the conclusion that Plaintiff actually or really had occasional or less contact with

3    others.

4            Defendant's arguments in opposition are mainly applicable to the generally performed

5    prong of step four.  Defendant's opposition as pointed to the actually performed prong is

6    essentially limited to arguing "even if the Court accepts Plaintiff's argument that the ALJ erred

7    in relying on the vocational expert's testimony in finding Plaintiff able to perform his past

8    relevant work as actually performed, any misstep was harmless because the ALJ both found that

9    Plaintiff could perform his PRW as generally performed and the vocational expert testified that

10   there are other jobs which exist in significant numbers in the national economy that Plaintiff

11   could perform (AR 66)."  (Opp'n 6.)  Plaintiff argues this is a concession of error as to the

12   actually performed prong.  (Reply 4.)  While not wholly a concession (Opp'n 3-4), the lack of

13   pointed argument and reliance on the harmless error doctrine demonstrates Defendant essentially

14   left the substance of the ALJ's actually performed analysis undefended.

15           Again, the ALJ concluded "[i]n comparing the claimant's residual functional capacity

16   with the physical and mental demands of this work, the undersigned finds that the claimant is

17   able to perform it as actually and generally performed," and that the  "vocational expert testified

18   that the above residual functional capacity would not preclude the performance of the claimant's

19   past relevant work."  (AR 30.)  The Court finds no supporting analysis in the opinion, nor

20   support in the hearing testimony or the record for the ALJ to make the determination that the

21   limitation to no more than occasional contact with the general public, co-workers or supervisors,

22   allows for the performance of Plaintiff's PRW as actually performed.  The VE testified that as a

23   general office position, the limitation to occasional contact would impact the ability to perform

24   the PRW: "based upon my professional experience, I would say that it would affect his past

25   work.  He would probably have more than occasional contact with workers."  (AR 67.)  There is

26   no testimony that Plaintiff actually performed the position in a more isolated than normal office

27   setting, and rather, the Plaintiff's description of the work as actually performed indicates greater

28   than occasional contact with coworkers and supervisors, at least without some reasoning

proffered by the ALJ for the alternative conclusion.  (AR 45–46, 346.)

Having found the ALJ erred as to the actually performed prong of the step four analysis, the Court considers the Defendant's proffer of harmless error.  In Tommasetti, cited by Defendant, the ALJ did made alternative findings at step five.  See Tommasetti v. Astrue, 533 F.3d 1035, 1044 (9th Cir. 2008) ("[A]lthough the ALJ erred at step four in finding that Tommasetti could perform his past work, this error was harmless because the ALJ properly concluded as an alternative at step five that he could perform work in the national and regional economies.").  Here, the ALJ did not make a step five determination.  Defendant argues harmless error because Defendant proffers the VE testified that there are other jobs which exist in significant numbers in the national economy that Plaintiff could perform.

Courts have found harmless error where a VE testified there are other jobs which exist in significant numbers in the national economy that Plaintiff could perform, and the ALJ did not actually proceed to make a step five determination.  See Cowan v. Astrue, No. C 07-1136 VRW, 2008 WL 2761684, at *10 (N.D. Cal. July 14, 2008) ("Even if the court were to find that the ALJ erred in his step four determination, the error would be harmless.  Plaintiff could not pass the fifth step of the disability determination because he is capable, according to the testimony of the VE, of performing many other kinds of work outside his past work experience that exist in significant numbers in the national economy."); Summers v. Astrue, No. EDCV 10-1060 RNB, 2011 WL 1211860, at *1, 3 (C.D. Cal. Mar. 30, 2011) ("As a result of this error by the ALJ, the Court is unable to affirm the ALJ's determination at Step four . . . given the testimony of the vocational expert ("VE") that there were other jobs existing in significant numbers in the regional and national economies that a hypothetical person with plaintiff's vocational profile and other exertional and non-exertional limitations, who also had all of the environmental limitations to which the State Agency review physicians had opined, remained capable of performing . . . the Court has no doubt that a remand for further proceedings here would be pointless."); Hadnot v. Astrue, No. C 07-5504 PJH, 2008 WL 5048428, at *12 (N.D. Cal. Nov. 25, 2008) (finding harmless error at step four where hypothetical presented to VE contained all limitations but ALJ did not make step five determination), aff'd, 371 F. App'x 875 (9th Cir. 2010).

While affirmed in Hadnot, it does not appear the step four/step five harmless error finding was clearly challenged or discussed at the Ninth Circuit level in Hadnot.  See 371 F. App'x 875.  In this regard, in Harris, the court noted the "parties did not cite, nor could the Court find, any Ninth Circuit opinion addressing the circumstances here, when the ALJ did not make an alternative step five finding but the VE testified sufficiently for the record to support a step five finding."  Harris v. Berryhill, No. 3:16-CV-0977-SI, 2017 WL 3034888, at *5 (D. Or. July 18, 2017).  The court noted district courts in the Ninth Circuit "are divided on whether a court must remand in such circumstances, because to do otherwise would be affirming on a ground not relied on by the ALJ, or whether a court may affirm because the record is sufficient to show that the ALJ's error is inconsequential to the ultimate non-disability determination."  Id. (collecting cases).  The Harris court concluded that because there was another error in the ALJ's opinion it did not "reach the issue of whether a court may affirm the Commissioner's finding of non-disability when the record contains evidence that the plaintiff is capable of performing other work in the national economy, even when the ALJ stopped his or her analysis at step four."  Id.

In Lamb, the defendant argued any error at step four was harmless, however potential inconsistencies were not addressed by the VE:

> The Defendant contends that any step-four error was harmless nonetheless, because, although the ALJ did not make a step-four determination, the VE testified that Plaintiff was capable of performing other jobs—telemarketer, receptionist, and general office clerk—that existed in the national economy. However, the other jobs identified by the VE—telemarketer, receptionist, and general office clerk—also require either frequent or occasional omni-directional reaching according to the DOT. Therefore, a potential inconsistency also exists between the VE's testimony regarding Plaintiff's ability to perform these jobs and the DOT's description of the requirements of these jobs. As a result, the VE's testimony that Plaintiff can perform these jobs in light of her RFC cannot be credited until this potential inconsistency is resolved.

Lamb v. Colvin, No. 1:13-CV-00137 GSA, 2014 WL 3894919, at *7 (E.D. Cal. Aug. 4, 2014). The court found that "had the ALJ proceeded to step five of the sequential disability analysis, the Court possibly could have found the step-four error to be harmless . . . [if] the ALJ made a step-five determination that was consistent with Plaintiff's RFC [however] the ALJ ended his analysis

1  at step four and did not make a step-five finding to the effect that Plaintiff was capable of

2  performing other jobs that existed in the national economy consistent with her RFC [and]

3  [t]herefore, the Court cannot find that the ALJ's step-four error was harmless." Id. at *6–7; see

4  also Albritten v. Berryhill, No. CV 17-0925-JPR, 2018 WL 3032860, at *6 (C.D. Cal. June 14,

5  2018) ("The ALJ's step-four error was not harmless . . .[the ALJ] made no step-five finding, and

6  the VE testified to no other available jobs . . . given the ALJ's lack of relevant findings in

7  addition to his step-four error, it is unclear whether he would still have found Plaintiff not

8  disabled had his past relevant work been properly analyzed.") (citing Lamb, 2014 WL 3894919,

9  at *6); Carreras v. Berryhill, No. CV 16-01728-RAO, 2017 WL 4274498, at *7 (C.D. Cal. Sept.

10 25, 2017) ("Because the ALJ ended the analysis at step four and did not make a step-five

11 alternative finding that Plaintiff was capable of performing other jobs that existed in the national

12 economy consistent with an RFC that incorporated limitations arising from her PTSD, the Court

13 cannot find that that ALJ's non-severity finding was harmless on this record.") (citing Lamb,

14 2014 WL 3894919, at *6); Thomas S. v. Comm'r, Soc. Sec. Admin., No. 6:19-CV-1808-BR,

15 2020 WL 5876942, at *6 (D. Or. Oct. 2, 2020) ("[T]he ALJ did not make any findings at Step

16 Five and, therefore, did not identify any other work that Plaintiff could do nor find Plaintiff had

17 any transferable skills.") (citing Lamb, 2014 WL 3894919, at *6).

18      Here, in addition to the ALJ never actually proceeding to make a step five finding

19 concerning other jobs in the national economy, most significant, and omitted from the

20 Defendant's proffer,[4] is the fact that the VE's testimony as to these other jobs was not provided

21 in conjunction with a hypothetical that included the limitation to no more than occasional

22 contact. As noted above, the ALJ first directed the VE to assume a person largely reflective of

23 Plaintiff's RFC, but did not include a limitation for occasional contact with the public,

24 coworkers, or supervisors, and the VE testified such person could perform the following

25 positions: (1) mail clerk (DOT 209.687-026); (2) hand packer (DOT 920.687-166); and price

26

27 [4] It is not clear whether this was an intentional choice of limited wording in the description of the testimony or a

28 mistake. (Opp'n 6 n. 2.) Plaintiff does not address the discrepancy between the hypothetical and the testimony in
   reply.

marker (DOT 209.587-034).  (AR 66.)  The ALJ and VE did not thereafter discuss other jobs in the national economy with that additional limitation included in a hypothetical.  (AR 66-71.)  Thus, the Court need not necessarily determine whether it may generally find harmless error without a step five finding from the ALJ, as the VE testimony in of itself does not convince the Court that it could find harmless error in either regard.  Accordingly, the Court cannot find an error as to the actually performed prong of the ALJ's step four analysis harmless based on what a presumptive step five determination would have been based on the VE testimony here, given the VE did not actually make a finding as to other jobs in the national economy in relation to the actual RFC determination here.

However, the error in the actually performed prong of the step four analysis may be appropriately found to be harmless if the Court determines that the ALJ's determination as to the generally performed prong of the step four determination was proper.  See, e.g., Parsons v. Comm'r of Soc. Sec., No. 1:18-CV-00892-JDP, 2019 WL 3943987, at *1 (E.D. Cal. Aug. 21, 2019) ("The Commissioner concedes that the ALJ erred in finding that claimant can perform this work as actually performed, but argues that this error was harmless since claimant can do the work as generally performed.  I agree."); Theodore M. v. Saul, No. CV 20-4382-JPR, 2021 WL 2646906, at *4 (C.D. Cal. June 28, 2021) ("But even if the ALJ erred in finding that Plaintiff could still do the job as actually performed, any error was harmless because he clearly could do the work as generally performed."); Hipolito D. v. Saul, No. 18CV1649-WQH(MSB), 2019 WL 3492231, at *3 (S.D. Cal. Aug. 1, 2019), report and recommendation adopted sub nom. 2019 WL 4141198 (S.D. Cal. Aug. 30, 2019).

Therefore, given the error in the actually performed prong of the step four analysis, the Court now proceeds to determine whether the ALJ's determination under the generally performed prong is free from legal error, thus making the above error ultimately harmless.

**D.    The ALJ's Generally Performed Determination was Erroneous**

1.    The Parties' Arguments

Plaintiff argues the VE posited on the record that Plaintiff's past work *could* be accommodated with isolation, but argues agency policy actually agrees with the natural reading

of *generally* performed in the national economy, and rejects the possibility of accommodation in assessing the ability to perform past jobs as generally performed. The Social Security Administration's Program Operations Manual System ("POMS") provides that, when evaluating work with accommodations provided by employers, "[d]o not assume disability accommodations would be available when assessing ability to do PRW as workers generally perform it in the national economy." POMS DI 25005.020 § F, available at https://secure.ssa.gov/poms.nsf/lnx/0425005020 (last accessed September 27, 2022). "POMS is an internal SSA manual, for the internal use of SSA employees, and has no legal force and does not bind the Social Security Administration." Knott v. Barnhart, 269 F. Supp. 2d 1228, 1234 (E.D. Cal. 2003). It can, however, be persuasive authority in discerning the agency's interpretation. See Hermes v. Sec'y of Health & Human Servs., 926 F.2d 789 n.1 (9th Cir. 1991). Plaintiff correctly proffers that POMS are entitled to "respect." See Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ . . . such agency interpretations are entitled to respect, but only to the extent that those interpretations have the power to persuade . . .[w]e are not persuaded by the cited section of POMS that the statute and regulations require the ALJ to provide further explanation with specific factors, for several reasons.") (citations and internal quotations omitted).

Plaintiff contends that to the extent that the term *generally* contains any latent ambiguity, POMS meets the deference criteria. See Kisor v. Wilkie, 130 S.Ct. 2400, 2415–18 (2019). Additionally, Plaintiff directs the Court to language from the Supreme Court regarding reasonable accommodations in the context of both social security claims, as well as claims under the Americans with Disabilities Act ("ADA"):

> By way of contrast, when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of "reasonable accommodation" into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI. See Memorandum from Daniel L. Skoler, Associate Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15–401 to 15–402 (1998). The omission reflects the facts that the SSA receives more than 2.5

> million claims for disability benefits each year; its administrative resources are limited; the matter of "reasonable accommodation" may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide. See Brief for United States et al. as *Amici Curiae* 10–11, and n. 2, 13. The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it.

Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 803, 119 S. Ct. 1597, 1602, 143 L. Ed. 2d 966 (1999) ("Cleveland").

Plaintiff argues the ALJ's finding he could perform the work of a cost clerk as generally performed in the national economy lacks the support of substantial evidence as "could be accommodated" does not mean typically performed with an accommodation; thus the finding violates the regulation and its intentional use of *generally* in assessing past relevant work; violates agency policy construing as generally performed as excluding possible accommodation; and violates the binding ruling that the Commissioner never considers accommodation in the context of a disability claim adjudicated in the administrative law context under the Social Security Act's disability provisions.

Defendant argues the regulations and Social Security Rulings are supportive of finding the ALJ made a proper step four determination. Under Social Security Ruling (SSR) 82-61, to properly determine that a claimant can return to his PRW, an ALJ must identify the claimant's RFC, the demands of his past work, and find that the RFC does not prevent him from performing that past work. Titles II & Xvi: Past Relevant Work-the Particular Job or the Occupation As Generally Performed, SSR 82-61 (S.S.A. 1982).[5]    The Social Security regulations state that

---

[5]  This SSR provides:

> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.
>
> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional

vocational experts or other resources, such as the DOT, may be used to help determine whether a claimant can perform past relevant work, and that "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).

Defendant contends Plaintiff misleadingly characterizes the slight change in worksite discussed by the VE as a "reasonable accommodation," however, such characterization is not supported by the evidence or the VE testimony.  Instead, Defendant argues the hypothetical change was described as "a simple accomodat[ion] of change in the worksite" to account for the limitation to only occasional coworker contact, and the VE testified Plaintiff could sit in a cubicle at work and remained capable of performing his PRW as generally performed (AR 69-70).  (Opp'n 4-5.)  Defendant argues the Plaintiff improperly attempts to characterize the VE testimony as a reasonable accommodation as defined under the ADA, requiring "isolation."

As for Plaintiff's citing of <u>Cleveland</u>, 526 U.S. at 803, Defendant proffers therein the Supreme Court also stated a "reasonable accommodation" involves "making existing facilities used by employees readily accessible to and usable by individuals with disabilities," including "acquisition or modification or equipment or devices."  However, these quotations do not appear in <u>Cleveland</u>; Defendant's citation is incorrect.  The Supreme Court did cite one portion of the ADA for the definition, noting that "[r]easonable accommodations may include: 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of

demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."
**POLICY STATEMENT**: Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
1. The actual functional demands and job duties of a particular past relevant job; *or*
2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61 (S.S.A. 1982).

examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations.' " Cleveland, 526 U.S. at 803 (quoting 42 U.S.C. § 12111(9)(B)). Nonetheless, the quoted statute does contain the rest of Defendant's proffered definition of reasonable accommodation under the ADA, as the statute states "[t]he term 'reasonable accommodation' may include--**(A)** making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and **(B)** job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(A)-(B).

Based on the definition of reasonable accommodation in the ADA, Defendant argues Plaintiff's challenge fails because a slight modification to the worksite by having Plaintiff sit in a cubicle to reduce coworker contact to the occasional level does not meet the definition of a reasonable accommodation as considered by the Court in Cleveland. Defendant proffers that many offices utilize cubicles as a seating and working option for their employees, and having Plaintiff sit in a cubicle does not rise to the level of a reasonable accommodation under the ADA. See Loop v. Colvin, 651 F. App'x 694, 696–97 (9th Cir. 2016) (unpublished) ("Loop").

In reply, Plaintiff urges the Court to use the ordinary dictionary definition of *generally*, and apply commonsense understanding to the dichotomy between actually performed, and generally or usually performed in the national economy. Plaintiff contends the ALJ did not consider the evidence to suggest any material difference between as actually and as generally performed, and the Court should not interject a material factual finding that the ALJ did not actually make. As for the Defendant's argument that that giving a person a cubicle to work in does not constitute an accommodation, Plaintiff responds that Loop is an unpublished opinion from the Ninth Circuit; that the evidence in Loop permitted the inference that workers in a call center generally had a sit/stand option as that is how that job is typically performed; and here the VE did not testify that cost clerks generally have secluded work stations that obviated more than occasional interaction with coworkers.

2.     The ALJ Erred in the Step Four Generally Performed Determination

The VE testified PRW would not be eliminated, but the limitation on occasional contact with others would affect it.  (AR 68.)  Again the most relevant aspect of the exchange between the ALJ and VE, and Plaintiff's counsel and the VE, are as follows:

> [VE]   Well, we're working in an office setting is what we're working in.  And usually in an office setting the individual has to be around coworkers more than occasionally.  They can offset their worksite a little bit to accommodate for that if they need to.  But in general, they're around coworkers more than occasionally.
>
> [ALJ]  So it could be a simple accommodate of change in the worksite slightly or –
>
> [VE]  Yes, it could be.
>
> [ALJ]  So the past work would remain available?
>
> [VE]   I think accommodations would be made and I think the individual could do the past work, yes . . .
>
> . . . [Counsel]  And the accommodations for occasional interaction with coworkers and supervisors, why type of accommodation would need to be made?
>
> [VE]   Well, the individuals could put him in a cubicle, that's something, they could put a cubicle around the individual where they mainly sit at their desk and did the paperwork without, you know, without close contact to other individuals.

(AR 69-70.)

The Court finds that the analysis in Loop, and the number of related cases that the Court's research uncovered, are the most pointed authority to the issues at hand here.   Loop and other cases stand for the proposition an ALJ may rely on an expert's testimony in determining whether an "accommodation"[6] is so normal or prevalently accepted or available in an industry, that it may be considered to be part of the position as generally performed.  Here, given the tenor of the testimony from the VE, the Court finds the VE did not clearly testify a particular accommodation is prevalent or generally accepted in the industry.  The Court finds the testimony at least did not clearly substantiate enough of a connection, as the Loop holding and related

---

[6]  As apparent from the caselaw, it is not really the terminology utilized that is determinative of whether the ALJ runs afoul of their obligations under the relevant laws and regulations.

caselaw is largely confined to the sit/stand option, and those decisions relied on considerable established support already in the caselaw for finding such sit/stand option to be an accommodation that is essentially part of an occupation as generally performed in the economy. Extensions of the principle outside of the sit/stand option involved testimony establishing the general practice of allowing a specific accommodation.

Here, the "accommodation" of a cubicle or some other change to the layout of the office structure entirely, does not appear to have the natural support for the Court to defer or read more into the testimony that actually occurred, particularly given the ALJ's opinion made no mention of the accommodation or it being prevalent in the industry as to distinguish it from the ALJ's actually performed determination, which the Court found erroneous above.  It was the Plaintiff's counsel that actually elicited testimony as to what the accommodation's form would take, and thus it is difficult for the Court to conclude the ALJ elicited testimony that a specific accommodation is prevalent enough to be encompassed within a category of work as generally performed.

In Loop, the court rejected a challenge similar to the one here, but as to a sit/stand option for a call center position:

> Finally, substantial evidence supported the ALJ's finding, at step four, that Loop was capable of performing her past relevant work as a call center customer service representative. See Ghanim, 763 F.3d at 1166. Loop contends that this finding was in error because the vocational expert testified that she could perform the call center work with the "accommodation" of a sit/stand option, but the possibility of reasonable accommodation may not be taken into consideration in the determination whether a Social Security claimant is disabled. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (contrasting Social Security disability claims and claims under Americans with Disabilities Act). Loop's contention lacks merit because the gist of the vocational expert's testimony was that allowing a sit/stand option is commonplace in call center workplaces, and this is how the call center job is generally performed in the national economy. See 20 C.F.R. § 404.1560(b)(2) (providing that vocational expert may testify as to how claimant's past relevant work is "generally performed in the national economy"); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that ALJ may take administrative notice of any reliable job information, including information provided by vocational expert); see also Jones v. Apfel, 174 F.3d 692, 693–94 (5th Cir. 1999) (holding that ALJ properly relied on vocational

1
2

expert's testimony indicating that allowing for employee to alter between sitting and standing is prevalent accommodation in workplace).

3  _Loop_, 651 F. App'x at 696–697.  As recognized in other cases in and out of the Circuit, the key

4  to the Ninth Circuit's analysis appears to be whether the "gist" of the VE testimony equated to an

5  opinion that the accommodation is commonplace, and thus an allowance by an employer of such

6  a sit/stand option is actually *how* the job *is* generally performed in the national economy.  The

7  Ninth Circuit did not appear to directly substantively discuss the interplay between the ADA and

8  the SSA regime, and the holding in Cleveland,[7] instead focusing on whether the VE's testimony

9  provided substantial evidence for the ALJ to make the determination under the appropriate social

10  security regulations that allow an ALJ to utilize VE testimony in determining how the job is

11  generally performed in the national economy.

12

13
14
15

[7]  A reading of the Loop opinion appears to show the Ninth Circuit was restating the Plaintiff's argument without necessarily analyzing the contours of the interplay between the ADA and the disability analysis.  The Eighth Circuit has taken the position that it matters not whether certain terminology can be used to describe a workplace modification as a reasonable accommodation, and rather, it matters if the testimony reflects that the modification has become common or prevalently offered, similar to the "gist" of the testimony view taken by the Ninth Circuit in Loop:

16
17
18
19
20

These cases merely demonstrate that ALJs may properly rely on VE testimony that a certain needed modification is part of the functional workplace. It makes no difference that a particular workplace modification, such as a bariatric chair, might be called an "accommodation" or even a "reasonable accommodation." See 42 U.S.C. § 12111(9) (defining "reasonable accommodation" for ADA purposes). The use of the phrase is immaterial. It also makes no difference that a particular modification or accommodation is offered because the ADA requires employers to do so. What matters is the functional workplace as it actually exists. If a particular modification or "accommodation" has become prevalent and is commonly offered—whether considered required by the ADA or not—an ALJ may, of course, consider this evidence in making its determination.

21

Higgins v. Comm'r, Soc. Sec. Admin., 898 F.3d 793, 796 (8th Cir. 2018).  Tanner appears to reasonably state the interplay, citing the Eighth Circuit:

22
23
24
25
26

To be sure, as a general rule "when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' [under the ADA] into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803, 119 S. Ct. 1597, 1602, 143 L.Ed. 2d 966 (1999). Yet, while Social Security disability determinations typically may not be grounded upon an ALJ's belief regarding what the law may require as a reasonable accommodation under the ADA, the fact that many employers, as a matter of custom and practice, make accommodations to their workers is a relevant factor to consider when making this disability determination.  Courts have long recognized this distinction between ADA mandates and general industry practices.

27
28

Tanner v. Berryhill, No. 1:18-CV-1433, 2019 WL 2184767, at *11 (M.D. Pa. May 21, 2019) (citing Higgins, 898 F.3d at 796).

The Court notes that in looking at the underlying district court opinion in <u>Loop</u>, the testimony from the VE provided that the sit/stand option is normally provided, however, the VE specifically stated that the call centers generally also require a doctor's note for what was described as a "reasonable accommodation," and the ALJ and VE discussed as to whether it was specially or regularly done:

> The ALJ then added a requirement that the individual be allowed to sit or stand at will. The VE testified that in her experience call center employers were "very willing to provide a reasonable accommodation and actually adapt work stations to allow a person to sit and stand at will." The ALJ queried whether this was a "special accommodation" or one that was done regularly. The VE replied that she had "seen it done with regularity." She testified that call center employers "will tell you that they do need a note from the doctor and they're willing to make that accommodation," and that all the employers she had dealt with would allow employees to sit or stand at will if a note from a doctor was provided.

<u>Loop v. Colvin</u>, No. 3:12-CV-01674-JE, 2014 WL 463265, at *4 (D. Or. Feb. 4, 2014), <u>aff'd,</u> 651 F. App'x 694 (9th Cir. 2016).  Thus on one hand the underlying testimony reflected the fact that in order to receive the accommodation, a request typically required a doctor's note in support, but also that based on her professional experience, it was done regularly and all employers she dealt with allowed it with such doctor's note.

The principle in <u>Loop</u> has almost uniformly been accepted as to the sit/stand option.  <u>See</u> <u>Deanne E. v. Saul</u>, No. 2:20-CV-05731 KES, 2021 WL 1612089, at *5 (C.D. Cal. Apr. 26, 2021) ("Consistent with this common-sense conclusion, multiple VEs in other cases have opined that claimants can perform the functional demands and job duties of a customer service representative as generally required by employers throughout the national economy with a sit/stand option.") (collecting seventeen cases).  Courts appear to find support in the fact the sit/stand option has repeatedly been affirmed as the general way a job is performed:

> It is true that "when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795, 803 (1999). However, plaintiff's characterization of the sit/stand option as a reasonable accommodation "lacks merit because the gist of the vocational

expert's testimony was that allowing a sit/stand option is commonplace in" the jobs identified. Loop v. Colvin, 651 Fed. Appx. 694, 696 (9th Cir. 2016). In this regard, the sit/stand option is not a reasonable accommodation; it is a permissible method for performing an identified job that has long been recognized by the courts. See Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628 (9th Cir. 2011) ("The vocational expert in this case found that the recommended jobs would allow for an at-will sit-stand option."); Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) ("Rather, a sit/stand option was required."); Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir. 1995) (noting "sit/stand options").

Goldman v. Berryhill, No. 2:17-CV-2450 DB, 2019 WL 498996, at *6 (E.D. Cal. Feb. 8, 2019).

The comments in Erwin are similar:

> The Ninth Circuit has further observed that "allowing a sit/stand option is *commonplace* in call center workplaces, and this is how the call center job is generally performed in the national economy." Loop v. Colvin, 651 F. App'x 694, 696 (9th Cir. 2016) (emphasis added). Thus, because a sit/stand option is "commonplace" in call center workplaces, the Court confidently concluded that the failure to include a sit/stand was harmless. Based on common experience, no reasonable ALJ would have found that a sit/stand option precludes working as a customer service representative in a call center, even if the ALJ failed to explicitly question the VE on this issue. See Alexander v. Saul, 817 F. App'x 401, 404 n.1 (9th Cir. 2020) ("the testimony of a vocational expert at step four is 'useful, but not required' ") (quoting Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)); see also Gutierrez, 844 F.3d at 808–09 (noting that while the DOT does not restrict a cashier to no overhead reaching, it is harmless error if the ALJ fails to question the VE on this apparent conflict because it is "obvious or apparent" that the typical cashier does not need to reach overhead).

Erwin v. Saul, No. 2:20-CV-05731-KES, 2021 WL 3082588, at *1 (C.D. Cal. June 21, 2021); see also Dewey v. Colvin, 650 F. App'x 512, 514 (9th Cir. 2016) (noting that where the DOT is "silent on whether the jobs in question allow for a sit/stand option," there is no conflict with a vocational expert's testimony that a claimant can perform a job with a sit/stand option).

The Court considers whether these holdings may be appropriately extended out into other types of "accommodations," given the observations by some courts as to the established nature of the sit/stand option. The Court finds support in a number of cases demonstrating it can be appropriately extended out, if the testimony provides that the accommodation is so prevalent or accepted as to be the way a particular job is generally practiced in the national economy.

1    The principle was extended to a high-back stool by a district court, finding the testimony

2  did not equate to a reasonable accommodation under the ADA, and actually noted a distinction

3  between preexisting accommodations and reasonable accommodations to be made.  See Saeed v.

4  Berryhill, No. 16-CV-11928-ADB, 2018 WL 1243953, at *10 n.15 (D. Mass. Mar. 9, 2018)

5  ("The Court rejects Claimant's argument that the VE's testimony regarding the availability of a

6  high-back stool constitutes a "reasonable accommodation" under the Americans with Disabilities

7  Act . . . her argument fails because the VE's testimony addressed jobs with "pre-existing

8  accommodations to suit [Claimant's] sit/stand option" rather than jobs that would require a

9  reasonable accommodation to be made specifically for Claimant.") (citing Ramirez v. Comm'r of

10  Soc. Sec., No. 1:14-CV-01176-SAB, 2015 WL 5544501, at *4 (E.D. Cal. Sept. 18, 2015); Loop,

11  651 F. App'x at 696).  In Ramirez, the court focused on the manner of testimony in that the VE

12  did not indicate it was a reasonable accommodation, nor even that the employer would have to

13  make a modification to the existing job site, but rather, the district court interpreted the testimony

14  as indicating 40% of the jobs would be able to accommodate a sit/stand option because the

15  employee would have access to a seat of some kind:

16           Plaintiff argues that the VE invoked the "reasonable

17  accommodation" concept from the ADA context when she testified
     that the job numbers would be eroded by 60% to "accommodate"

18  the fact that Plaintiff would need to be able to get on and off her
     feet at her discretion. However, given the context of the VE's

19  testimony, the Court disagrees. The Americans with Disabilities
     Act was not mentioned once during the entirety of the VE's

20  testimony. Accordingly, it is unlikely that the VE intended to
     invoke ADA terminology simply by mentioning "accommodate."

21  Further, the VE said "accommodate," not "reasonable
     accommodation." The VE did not mention modification of an

22  existing job to provide "reasonable accommodation" for Plaintiff's
     impairment. Thus, it is more likely that the VE's testimony referred

23  to the percentage of jobs with pre-existing accommodations to suit
     Plaintiff's sit/stand option. In other words, approximately 40% of

24  all the parking lot attendant jobs in the nation could naturally
     accommodate a sit/stand option because the employee would have

25  access to a pre-existing seat or stool, and not because the employer
     could provide a seating option that did not otherwise exist.

26  Similarly, 40% of all the cashier II jobs in the national could
     naturally accommodate a sit/stand option because the employee

27  would have access to a seat of some kind. **The VE made no
     mention of modifying or adding special stools or chairs to
     existing jobs to accommodate the sit/stand option.** Accordingly,

28  it is unlikely that the VE was invoking the "reasonable

accommodation" concept from the ADA context in his testimony.
The Court finds that the ALJ's interpretation of the VE's testimony was reasonable. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

*Ramirez,* 2015 WL 5544501, at *4 (emphasis added).

In *Richards,* extending the analysis out to bathroom break accommodations, the court there rested its affirmance on the fact the VE testimony was clearly describing that the bathroom break option was something that in her experience, was tolerated as an alternative option, and thus was less of a formal accommodation and more of how the job was typically or generally allowed to be performed by employers in those particular fields:

The VE never qualified her answer by stating that extra bathroom breaks would require employer accommodation. Likewise, she did not presume that employers would be willing to afford such an accommodation, or made the availability of jobs contingent upon an employer's willingness to allow extra bathroom breaks. Rather, the VE testified that in her experience, employers of addressers, telephone clerks, and hand packers typically tolerated an employee taking three five-minute bathroom breaks in the morning and three five-minute bathroom breaks in the afternoon in place of two standard fifteen-minute breaks. (Tr. at 49–51). The ALJ was entitled to rely on the VE's opinion, which was based upon her knowledge and experience. *See Loop v. Colvin,* No. 3:12–cv–01674–JE, 2014 WL 463265, at *7 (D. Or. Feb 4, 2014) (finding that the ALJ was permitted to accept a VE's testimony that a sit/stand option was not an accommodation, but rather, was an option virtually assured in the typical workplace); *Eaglebarger v. Astrue,* No. 1:11–CV–00038, 2012 WL 602022, at *6 (N.D.Ind. Feb. 23, 2012) (holding that the ALJ could rely upon the VE's testimony that certain allowances were generally accepted in the workplace); *and Titus v. Astrue,* No. 1:11CV1286, 2012 WL 3113165, at *13 (N.D.Ohio Jun. 12, 2012) (holding that the ALJ properly relied on the VE's opinion that the claimant could perform work, which allowed for a workplace modification that was not a formal accommodation). Consequently, if the act of allowing extra bathroom breaks does not constitute an "accommodation" in every work setting, it follows that including extra bathroom breaks in the RFC finding was not an erroneous incorporation of a workplace accommodation. *See Harris,* 2013 WL 4517866, at *4.

*Richards v. Colvin,* No. 2:14-CV-26508, 2015 WL 8489032, at *6 (S.D.W. Va. Oct. 7, 2015), report and recommendation adopted, No. CV 2:14-26508, 2015 WL 8492761 (S.D.W. Va. Dec. 10, 2015). Similarly, in *Benitez,* the testimony pertained to a specific accommodation

of allowing breaks every two hours as being accepted as "common in industry" and thus as generally performed. <u>Benitez v. Berryhill</u>, No. CV 16-9243 SS, 2017 WL 6403086, at *5 (C.D. Cal. Dec. 14, 2017) ("The ALJ properly relied on the VE's testimony that there are a significant number of jobs in the national economy that allow fifteen-minute breaks every two hours.").

Similarly, in <u>Hall</u>, the VE testimony concerning oxygen tanks was not viewed as describing a change to the workplace to accommodate the claimant, but as an aspect of a "broad vocational pattern," or as "routinely permitted":

> In any event, the VE in the instant action did not testify that employers would be bound by the ADA to make a special accommodation for Claimant. Instead, when questioned by Claimant's attorney as to whether he would consider Claimant's use of an oxygen tank to be an "accommodation" the VE replied that it "*could*" be considered an accommodation, but explained that jobs in the sedentary "office work" category, which the VE had listed in response to the second and third hypothetical scenarios, "would allow that normally." (Tr. at 72).[8] Accordingly, the VE was merely noting that the type of accommodation required by Claimant was routinely permitted in the relevant job category. Put simply, the VE's testimony described a "broad vocational pattern" relevant to the assessment of jobs available to Claimant, which was an entirely appropriate consideration in the disability analysis. *See Jones*, F.3d 692 at 694. Courts have frequently upheld ALJ decisions, which rely on a VE's determination that certain accommodations are generally allowed by employers. *See Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 796 (8th Cir. 2018) ("[t]hese cases merely demonstrate that ALJs may properly rely on VE testimony that a certain needed modification is part of the functional workplace. It makes no difference that a particular workplace modification, such as a bariatric chair, might be called an 'accommodation' or even a 'reasonable accommodation.' "); *see also Martin v. Berryhill*, No. CV 1:16-3741-SVH, 2017 WL 3446573, at *14-15 (D.S.C. Aug. 11, 2017) (finding that the ALJ did not err when he relied on the VE's testimony to find that jobs would generally accommodate claimant's restriction); *Golini v. Astrue*, No. 2:10-CV-525, 2011 WL 4409223, at *6 (E.D. Va. Aug. 16, 2011), report and recommendation adopted, No. 2:10-CV-525, 2011 WL 4408789 (E.D. Va. Sept. 20, 2011), aff'd, 483 F. App'x 806 (4th Cir. 2012); (the ALJ correctly used the VE testimony to

---

[8]  The Court notes that the testimony in <u>Hall</u>, that the employer "would allow that normally," is similar to the VE testimony offered here.  However in <u>Hall</u>, the VE testified that the specific need of the claimant, the use of the oxygen tank, was something employers normally allowed as a general practice.  Here in contrast, no specific accommodation was even mentioned until Plaintiff's counsel inquired, and the VE answered the employer could put Plaintiff in a cubicle, but never did the VE testify that employers allow for the installation of cubicles in their office space as part of the general practice of this particular job category.  (AR 69-70.)  Again, given the lack of any reference to this accommodation for the limitation in the ALJ's opinion and no reference to reliance on the VE's testimony as to the accommodation in conjunction with the as actually performed error, the Court cannot defer to the ALJ's conclusions here.

determine that many light jobs would be able to accommodate the claimant's need to switch between sitting and standing frequently); *McElmurray v. Colvin*, No. CIV.A. 2:13-189-MGL, 2014 WL 607503, at *3 (D.S.C. Feb. 18, 2014) (ALJ may consider a VE's testimony that certain limitations are, based on their vocational experience, generally accommodated in the marketplace); *Harris v. Colvin*, No. 3:12-CV-2302, 2013 WL 4517866, at *4 (N.D. Ohio Aug. 21, 2013) ("the VE's response to the ALJ's hypotheticals reflected his professional opinion on common workplace accommodations—not formal accommodations that must be requested under the ADA.").

As the Commissioner points out, (ECF No. 13 at 9), this Court has considered a similar issue and found that it was not impermissible to rely on a VE's determination that the type of accommodation required by the claimant was "typically tolerated" by a significant number of employers. *Richards v. Colvin*, No. 2:14-CV-26508, 2015 WL 8489032, at *6 (S.D.W. Va. Oct. 7, 2015), report and recommendation adopted, No. CV 2:14-26508, 2015 WL 8492761 (S.D.W. Va. Dec. 10, 2015) (remanded on other grounds). Here, as in *Richards*, the VE was not testifying that Claimant's limitations would require a formal accommodation; he merely opined that Claimant's limitations were of the type generally accepted by employers in an office setting with clerical positions. (Tr. at 73).

Hall v. Berryhill, No. 2:18-CV-00302, 2018 WL 8017182, at *14 (S.D.W. Va. Dec. 6, 2018), report and recommendation adopted, No. 2:18-CV-00302, 2019 WL 495586 (S.D.W. Va. Feb. 8, 2019).

While the Plaintiff has the burden at step four, the ALJ is required to make requisite factual findings to support the conclusion that the Plaintiff is able to perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy.   Pinto, 249 F.3d at 844 (citing SSR 82-62; 20 C.F.R. §§ 404.1520(e), 416.920(e)).   "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."   20 C.F.R. § 404.1560(b)(2).   However, based on the above caselaw, the testimony of the VE excerpted above as elicited by the ALJ and Plaintiff's counsel, and the ALJ's opinion, the Court finds the ALJ erred in the manner of reliance on the VE, and did not sufficiently explain the reliance on the VE testimony in making the step four determination.

Further, the VE did not clearly testify that a particular specific accommodation is prevalent or generally accepted in the industry to the extent that it is essentially part of an occupation as generally performed in the economy, and the tangential discussion of a cubicle accommodation would involve a possible change to the layout of an office structure entirely, rather than a preexisting accommodation.  The VE never connected the cubicle testimony to an opinion that such specific accommodation was generally accepted.

The Court finds the step four findings legally erroneous and not supported by substantial evidence in the record.  See Loop, 651 F. App'x at 696–697 ("[T]he gist of the vocational expert's testimony was that allowing a sit/stand option is commonplace in call center workplaces, and this is how the call center job is generally performed in the national economy."); Higgins, 898 F.3d at 796 ("What matters is the functional workplace as it actually exists.  If a particular modification or 'accommodation' has become prevalent and is commonly offered— whether considered required by the ADA or not—an ALJ may, of course, consider this evidence in making its determination."); Goldman, 2019 WL 498996, at *6 ("the sit/stand option is not a reasonable accommodation; it is a permissible method for performing an identified job that has long been recognized by the courts."); Erwin, 2021 WL 3082588, at *1 ("because a sit/stand option is 'commonplace' in call center workplaces, the Court confidently concluded that the failure to include a sit/stand was harmless."); Saeed, 2018 WL 1243953, at *10 n.15 ("The Court rejects Claimant's argument that the VE's testimony regarding the availability of a high-back stool constitutes a 'reasonable accommodation' under the Americans with Disabilities Act . . . her argument fails because the VE's testimony addressed jobs with 'pre-existing accommodations to suit [Claimant's] sit/stand option' rather than jobs that would require a reasonable accommodation to be made specifically for Claimant."); Ramirez, 2015 WL 5544501, at *4 (The VE did not mention modification of an existing job to provide 'reasonable accommodation' for Plaintiff's impairment . . . made no mention of modifying or adding special stools or chairs to existing jobs to accommodate the sit/stand option."); but see Tanner, 2019 WL 2184767, at *11 ("the fact that many employers, as a matter of custom and practice, make accommodations to their workers is a relevant factor to consider when making this disability

1   determination.").

2       **E.**    **The Court finds Remand is Appropriate**

3       The ordinary remand rule provides that when "the record before the agency does not

4   support the agency action, . . . the agency has not considered all relevant factors, or . . . the

5   reviewing court simply cannot evaluate the challenged agency action on the basis of the record

6   before it, the proper course, except in rare circumstances, is to remand to the agency for

7   additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

8   1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at

9   1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

10  decision by the Commissioner 'with or without remanding the cause for a rehearing.'"

11  Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is

12  discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand

13  with instructions to calculate and award benefits when it is clear from the record that the

14  claimant is entitled to benefits. Garrison, 759 F.3d at 1019. Even when the circumstances are

15  present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

16  or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson

17  v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

18      The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

19  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

20  award benefits: (1) the record has been fully developed and further administrative proceedings

21  would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

22  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

23  discredited evidence were credited as true, the ALJ would be required to find the claimant

24  disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true

25  doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

26  further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

27  evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

28  Garrison, 759 F.3d at 1021.

1  The Court finds that based on the ALJ's opinion and review of the record, doubts remain

2  as to whether Plaintiff is in fact disabled.  The Court orders this action remanded for further

3  administrative proceedings consistent with this opinion, and to further develop the record as

4  deemed necessary.

5  **V.**

6  **CONCLUSION AND ORDER**

7  Based on all of the foregoing reasons, the Court finds the ALJ's determination at step

8  four concerning Plaintiff's ability to perform past relevant work as actually performed and as

9  generally performed was erroneous and not supported by substantial evidence in the record.

10  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

11  Commissioner of Social Security is GRANTED and this matter is remanded back to the

12  Commissioner of Social Security for further proceedings consistent with this order.  It is

13  FURTHER ORDERED that judgment be entered in favor of Plaintiff Ishac Eshoo Lazar and

14  against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to

15  CLOSE this action.

16

17  IT IS SO ORDERED.

18  Dated:   **September 30, 2022**

UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28